IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Cr. No. C-06-585 (2) |
| | § | C.A. No. C-07-460 |
| SEFERINO DE LOS SANTOS, | § | |
| | § | |
| Defendant. | § | |

**ORDER DENYING MOTION TO VACATE,
SET ASIDE OR CORRECT SENTENCE, AND
ORDER DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is Seferino Luis De Los Santos' ("De Los Santos") motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255, which was received by the Clerk on December 4, 2007. (D.E. 50.)[1] The Court ordered the government to respond (D.E. 52), and the government filed a combined answer, motion for summary judgment and alternative motion to dismiss on February 8, 2008. (D.E. 62, 63.) On February 12, 2008, the Clerk received from De Los Santos a "traverse" to his counsel's affidavit, and an identical copy of the same document was received on February 22, 2008. (D.E. 65, 68.) De Los Santos filed a reply to the entirety of the government's response on February 26, 2008. (D.E. 69.)

The Court has reviewed all of the filings by the parties and the record in this case. As discussed in detail herein, most of De Los Santos' claims are subject to dismissal because he waived his right to file those claims. His other claims, which arguably fall outside the scope of his waiver, fail on their merits. For these reasons, the Court DENIES his § 2255 motion. Additionally, the Court DENIES De Los Santos a Certificate of Appealability ("COA").

---

[1] Docket entries refer to the criminal case, C-06-cr-585.

## I.  JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

## II.  FACTS AND PROCEEDINGS

### A.    Summary of Offense[2]

In April of 2006, Johnny Joe Elizondo was arrested at the Falfurrias Border Patrol Checkpoint after being found with 609 kilograms of marijuana wrapped in cellophane.  (R. Tr. at 36; PSR at ¶ 7.) He told authorities that De Los Santos had hired him originally as a legitimate truck driver, but then there wasn't work, and De Los Santos had recruited him to drive marijuana for Rodolfo Homero Ramirez, De Los Santos' co-defendant herein.  (R. Tr. at 36-38.)[3]  Elizondo drew a map of a ranch where he had obtained marijuana from Ramirez, who owned the marijuana.  Elizondo told agents that he had transported on at least three occasions about 600 kilograms of marijuana,[4] and that he was paid $5,000 for each load.  (R. Tr. at 36-37.)  All three loads were attributable to De Los Santos, for a total of approximately 1,800 kilograms of marijuana.  (R. Tr. at 38.)

At the rearraignment, the foregoing statement of facts was given.  De Los Santos corrected the statement to explain that Elizondo never came to him looking to do legitimate loads.  Instead, De Los

---

[2]  Unless otherwise noted, the facts of the offense as set forth herein are derived from the prosecutor's recitation of the facts during rearraignment.  (D.E. 56, Rearraignment Transcript ("R. Tr.") at 35-39.)  Where applicable, De Los Santos' objections or corrections to that recitation are noted.  Additional detailed information concerning the offense is set forth in Paragraphs 4 through 13 of the Presentence Investigation Report ("PSR").

[3]  At one point during the recitation of facts, Assistant United States Attorney ("AUSA") Booth referenced a "Mr. Salinas" as Elizondo's recruiter, but she later identified the recruiter as De Los Santos. (Compare R. Tr. at 36 with R. Tr. at 37, 38.)  De Los Santos is described in the PSR as being the individual who recruited Elizondo.  (PSR at ¶ 11.)  Based on the entirety of the record, the Court concludes the reference to "Salinas" was intended to be a reference to De Los Santos and was merely an erroneous substitution by the AUSA.

[4]  Although AUSA Booth stated that Elizondo debriefed as to 600 *pounds* of marijuana per load, she later referred to *kilograms* and all references in the PSR were to kilograms.

Santos told the Court that he hired Elizondo to run loads of drugs.  Specifically, the following exchange occurred:

> **THE COURT:** Okay.  So you hired him to do loads and not do legitimate work.
>
> **DEFENDANT DE LOS SANTOS:** Exactly.
>
> **THE COURT:** Is that right?
>
> **DEFENDANT DE LOS SANTOS:** Yes.
>
> **THE COURT:** Okay.  And do you know Mr. Ramirez?
>
> **DEFENDANT DE LOS SANTOS:** I've seen him there.
>
> **THE COURT:** At the ranch?
>
> **DEFENDANT DE LOS SANTOS:** Yes.
>
> **THE COURT:** When you went to do the marijuana stuff?
>
> **DEFENDANT DE LOS SANTOS:** Yes.

(R. Tr. at 41-42.)

When the Presentence Investigation Report was prepared, it described essentially the same facts, including that Elizondo was hired by De Los Santos to haul marijuana from Texas to Indianapolis,  Indiana for $5,000 in February or March of 2006.  Additionally, the PSR described additional conduct by De Los Santos.  Specifically, on May 9, 2006, the St. Louis County, Missouri, Multi-Jurisdictional Drug Task Force received information from an anonymous source that De Los Santos and Audrey Gonzales, who were staying at the Quality Inn in Pacific, Missouri and driving a U-Haul rental truck with an Arizona license plate, may be engaged in suspicious activities involving drug trafficking.  A check on the U-Haul truck revealed that it had been rented on May 5, 2006 in Edinburg, Texas and was to be returned on May 10, 2006 to Hereford, Texas.  De Los Santos was listed as the individual who leased it.  Surveillance was conducted and the agents observed De Los

Santos and Gonzales leaving the motel.  De Los Santos placed some luggage in the rear of the truck.
(PSR at ¶ 8.)

After exiting the motel parking lot, De Los Santos drove the truck west on Interstate 44.  The
agents requested the assistance of the Franklin County, Missouri Sheriff's Department, who initiated
a traffic stop on the truck.  Both De Los Santos and Gonzales appeared nervous.  As De Los Santos
was patted down for officer safety, the detective encountered a block-like object in De Los Santos'
crotch area, which was discovered to be a large bundle of U.S. currency totaling $23,300.  When
questioned about the currency, De Los Santos stated that he used to be a criminal and was worried
about getting robbed.  De Los Santos stated that the money was for a down payment on a truck that he
had planned to purchase and that he had rented the U-haul truck and driven to Fort Wayne, Indiana, to
help Gonzales' cousin move.  (PSR at ¶ 9.)

Gonzales was questioned and she stated that De Los Santos had rented the U-Haul truck to help
his cousin move.  As one of the agents and his drug service canine approached, the dog appeared to
show interest in Gonzales.  As Gonzales noticed the dog's interest, she began to move away from the
dog.  A search of Gonzales revealed a shrink-wrapped package in the waistband of her clothing,
which contained a total of $7,500. Both De Los Santos and Gonzalez were processed and released
on this occasion. (PSR at ¶ 10.)

## B.  Criminal Proceedings

On August 23, 2007, a two-count indictment was filed against De Los Santos and Ramirez.
(D.E. 7.)  In Count One, De Los Santos was charged with conspiracy to knowingly and intentionally
possess with intent to distribute more than 1000 kilograms of marijuana, in violation of 21 U.S.C.
¶¶ 846, 841(a)(1) and 841(b)(1)(A).  (D.E. 7.)  In Count Two, De Los Santos was charged with
knowingly and intentionally possessing with intent to distribute approximately 609 kilograms of
marijuana, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). (D.E. 7.)

4

### 1.  Rearraignment

On September 26, 2006, De Los Santos pleaded guilty to Count Two pursuant to a written plea agreement with the government.  (D.E. 24, 27.)  In exchange for his guilty plea and his waiver of appellate and § 2255 rights (discussed below), the government agreed to recommend a sentence at the lowest end of the applicable guideline range, to recommend that he be given a three-level credit for acceptance of responsibility, and to move to dismiss the remaining counts at the time of sentencing. (D.E. 27 at ¶¶ 1-2.)

Additionally, the plea agreement included a voluntary waiver of De Los Santos' right to appeal and to file a § 2255 motion:

> Defendant waives his/her right to appeal both the conviction and the sentence imposed.  Defendant is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed.  The defendant waives the right to appeal the sentence imposed or the manner in which it was determined.  The defendant may appeal only (a) a sentence imposed above the statutory maximum; or (b) an upward departure from the Sentencing Guidelines which had not been requested by the United States, as set forth in 18 U.S.C. § 3742(b).  Additionally, the defendant is aware that 28 U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final.  The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding.

(D.E. 27 at ¶ 7 (emphasis in original).)  The agreement was signed by both De Los Santos and his counsel.  (Id. at 5.)

At the rearraignment, the Court specifically questioned De Los Santos under oath to ensure that his plea was voluntary and knowing and to ensure that he understood and was voluntarily relinquishing his appeal rights and right to file a § 2255 motion:

> **THE COURT:** ... I'm going to discuss one more matter that you're giving up in this plea agreement that we've not gone over, and that is a right to file a post-conviction remedy.  It's also known as a 2255 or writ of habeas corpus.  If you go forward today, you also give up that

5

right forever. It's independent of these other rights that we've talked about.

You would ordinarily have had a right to file this, one of these motions and try to set aside your conviction and/or your sentence. But if you go forward today, you give up that right forever. You could have challenged your conviction or sentence based on ineffective assistance of counsel, constitutionality or jurisdiction. But if you go forward today, you give up that right forever. Do you understand that? ... Mr. De Los Santos?

**DEFENDANT DE LOS SANTOS**: Yes.

(R. Tr. at 20-21.)

The Assistant United States Attorney then summarized De Los Santos' plea agreement, including a reference to the waiver of § 2255 rights. (R. Tr. at 22-23.) De Los Santos testified that the summary was his entire agreement, and that he understood it. (R. Tr. at 23-24.) He also testified that there were no other agreements or promises made to him that were not contained in the written document, including any promise that he would get leniency, safety valve, or a motion for downward departure. (R. Tr. at 24.)

The Court showed De Los Santos a written copy of the plea agreement. (R. Tr. at 24.) He testified that the document was his plea agreement, that he had signed the last page, that he had read it completely before he signed it, and that he had discussed it completely with his attorney before he signed it. (R. Tr. at 26.) It is clear from the foregoing that De Los Santos' waiver of § 2255 rights was knowing and voluntary. See Fed. R. Crim. P. 11(b)(1)(N) (obligating court to ensure defendant understands any waiver of § 2255 rights and appellate rights prior to accepting his plea).

### 2. The Presentence Investigation Report & Sentencing

The Court ordered the U.S. Probation Office to prepare a Presentence Investigation Report ("PSR"). (D.E. 29.) The PSR calculated De Los Santos' base offense level for the offense at 32, holding him accountable for 1,000 to 3,000 kilograms of marijuana. (PSR at ¶¶ 18-23.) The PSR also determined, however, that De Los Santos was a career offender within the meaning of U.S.S.G.

§ 4B1.1, which raised his offense level to 34.  (PSR at ¶ 24.)  It recommended a three-level adjustment for acceptance of responsibility, resulting in a total offense level of 31.  (PSR at ¶¶ 24-26.)  His criminal history category was a VI, because of his status as a career offender.  (PSR at ¶¶ 33-35.)  When coupled with his criminal history category of VI, his resulting guideline sentence for a term of imprisonment was 188 to 235 months.  (PSR at ¶¶ 51.)  De Los Santos, through counsel, filed a statement indicating that he had no objections to the PSR.  (D.E. 30.)

The case was called for sentencing on December 12, 2006.  (D.E. 41.)  In response to questioning from the Court, De Los Santos stated that he had received a copy of his PSR, that he had discussed it with his attorney and that his attorney had answered all his questions.  (D.E. 57, Sentencing Transcript ("S. Tr.") at 4.)  Although there were no objections lodged to the PSR, counsel did make clear that De Los Santos had a number of "clarifications" to the PSR.  (S. Tr. at 5.)  Pertinent to his claims here, these clarifications included De Los Santos's assertion that he never paid Elizondo $5,000, but instead it was Ramirez who had paid Elizondo.  (S. Tr. at 6.)  The Court then asked De Los Santos if there were any other mistakes, "no matter how small" in the PSR.  (S. Tr. at 7.)  De Los Santos responded, "No, Your Honor."  (S. Tr. at 7.)  Notably, the PSR explicitly states that De Los Santos recruited Elizondo to drive loads of marijuana for Ramirez.  Contrary to his protestations in his § 2255 motion, De Los Santos apparently did not believe that was a mistake at the time of sentencing.

The government recommended a sentence of 120 months pursuant to U.S.S.G. § 5K1.1, and the Court imposed that sentence.  (S. Tr. at 8-11.)  The Court also imposed a 37-month sentence on the petition for revocation of his supervised release in an earlier case, to run consecutive.  (S. Tr. at 11.)  The Court also imposed a five-year term of supervised release and a $100 special assessment.

Judgment of conviction and sentence was entered December 19, 2006.  (D.E. 45.)  Consistent with his waiver of appellate rights, De Los Santos did not appeal.[5]  On December 4, 2007, the Clerk received De Los Santos § 2255 motion.  (D.E. 50.) It is timely.

### III.  MOVANT'S ALLEGATIONS

In his § 2255 motion, De Los Santos lists four grounds for relief.   In his first ground for relief, he alleges that his sentence is a "miscarriage of justice" because he was sentenced based on an amount of marijuana that included 609 kilograms.  He now claims that he was not involved in any aspect of the 609 kilograms.  He claims that Ramirez and Elizondo agreed to the transportation of the load involving 609 kilograms without his knowledge. (D.E. 50 at 4.)

In his second ground for relief, he claims that his sentence is erroneous because it was based on the incorrect assertion that he hired Johnny Elizondo.  De Los Santos claimed that he did not hire Elizondo, but merely introduced him to Ramirez.  He alleges that he objected to this description at his rearraignment by telling his attorney, but that his attorney told him that now was not the time to object and that the issue could be "fixed" later.  (D.E. 50 at 5.)

In his third ground, he claims that he was denied the effective assistance of counsel because his attorney failed to object to the characterization that De Los Santos had hired Elizondo, thereby resulting in the 609-kilogram load being attributed to him.  In connection with this claim, he argues that his attorney induced him to lie to the Court at his rearraignment because he told De Los Santos to admit to "several lies" which increased his term of imprisonment and made him "look  like a major player."  (D.E. 50 at 7.)

---

[5]  Although he did not appeal his conviction or sentence, De Los Santos later filed several other post-conviction motions.  These included a motion to amend the judgment, which the Court denied (D.E. 47, 48), and several motions in which he asked for a Court order requiring his attorney to provide certain documents to him (D.E. 49, 51), which were also denied. (D.E. 52, 53.)  De Los Santos appealed the denial of his motions seeking documents, and that appeal remains pending before the Fifth Circuit.  (See D.E. 54; see generally docket in United States v. De Los Santos, No. 08-40066 (5th Cir.).)

In his fourth and final ground for relief, De Los Santos makes essentially the same basic argument as his first and second grounds. That is, he argues that because his sentence was based on "incorrect facts and attributes" in his PSR, his sentencing was fundamentally defective and violated his due process rights. (D.E. 50 at 8.)

The government has moved for the dismissal of De Los Santos' motion in its entirety on the grounds that all of his claims are barred by his waiver of § 2255 rights. (D.E. 62 at 9.)[6] It also addresses his claims of ineffective assistance of counsel on their merits and argues that he is not entitled to relief.

In further support of its motion to dismiss, the government has provided the affidavit of De Los Santos' appointed counsel in his criminal proceedings, David Diaz. Mr. Diaz denies the allegations in De Los Santos' motion that pertain to him. In particular, Diaz avers that he never told De Los Santos during sentencing "not to be concerned as this was his best deal," never induced De Los Santos to lie, did not continuously "tap" him on the shoulder as he says, and that he does not believe there was any violation of due process or fundamental defects in De Los Santos' case. Diaz also denies that he told De Los Santos not to object at the rearraignment by telling him "we'll fix that later" or "Now is not the time to object." (D.E. 62 at Diaz Aff.)

In his reply and his response to Diaz's affidavit (D.E. 65, 68, 69), De Los Santos reiterates his claims. Again, he emphasizes that his primary contention underlying his entire motion is that he did not "hire" Elizondo and that therefore the evidence does not support his conviction or sentence. (See D.E. 69 at 2 ("the hingepin [sic] of this case is that the movant did not hire Driver Johnny Elizondo, Nor could he because the drugs/marijuana did not belong to him and he had no shared

---

[6] De Los Santos admits that he agreed to the appellate waiver and waiver of his § 2255 rights, but nonetheless contends that enforcement of his waiver would work a miscarriage of justice. Again, he relies on his claims that his conviction and sentence were unconstitutional. (D.E. 69 at 1-2.)

interest in this venture."); D.E. 69 at 6 (describing the alleged fact that De Los Santos did not hire anyone to run drugs as the "heart" of his § 2255 motion).) Instead, he claims that he merely introduced Elizondo to Ramirez, and thus that he did not recruit or hire him to drive loads of illegal drugs.  He claims that, at most, he's guilty of aiding and abetting, but was not guilty of possession, and that he could not be charged with possession of 609 kilograms because "this amount and this load was not within the scope of his knowledge or agreement."  (D.E. 65 at 2.)

Additionally, De Los Santos admits that he told the Court at his rearraignment that he had hired Elizondo, but contends that he did so only because the Court "screamed him into cowardice" and intimidated him with a "loud yelling" and "aggressive manner."  (D.E. 69 at 4.)  He claims that he agreed to what the Court was saying because he did not want to be on the "judge's bad side." (Id.) He claims, however, that his counsel should have argued the true fact that he did not hire anyone and that he did not possess marijuana.(Id.)  He further argues that counsel was ineffective for advising him that he was guilty of possession based on the facts and advising him that he should plead guilty.  (D.E. 69 at 5.)

In his replies, he also seems to be raising at least three new claims. Specifically, he first argues that counsel was ineffective for failing to challenge De Los Santos being sentenced as a career offender, on the grounds that the government failed to "file any information in conformity with 21 U.S.C. § 851."  (D.E. 65 at 4.)  He claims that the government's failure divested this Court of jurisdiction to sentence him as a career offender. (Id.)  Second, he argues that his attorney was deficient because he allowed De Los Santos to be sentenced based on more than 1,000 kilograms of marijuana, when his indictment only charged him with possession of 609 kilograms.  (Id.)  Third, he claims that his counsel failed to investigate the case and failed to subject the government's case to any "meaningful adversarial testing" despite the fact that "the government had nothing" on him.  (D.E. 69 at 6.)

For the reasons set forth herein, De Los Santos' claims fail.

## IV. DISCUSSION

**A.    28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996).  "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."  United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992).  "[A] collateral challenge may not do service for an appeal."  United States v. Frady, 456 U.S. 152, 165 (1982).

The Court need not address whether De Los Santos has procedurally defaulted his claims by failing to raise them on appeal.  Rather, the Court concludes that he validly waived some of his claims, i.e., his claims of ineffective assistance at sentencing and his direct challenges to his sentence.  These claims fall squarely within the scope of his waiver, and are denied on the basis of the waiver.  See infra Section IV.C.; United States v. Wilkes, 20 F.3d 651 (5th Cir. 1994) (enforcing defendant's voluntary and knowing waiver of § 2255 rights).  Moreover, even if they were properly before the Court, they fail on their merits.  See infra at Sections IV.D. and IV.E.

His claim of ineffective assistance of counsel during the plea negotiation process, however, arguably challenges the validity of his plea and his waiver.   Accordingly, it falls outside the scope of his § 2255 waiver.  See, e.g., United States v. White, 307 F.3d 336, 343-44 (5th Cir. 2002) (an ineffective assistance claim survives a waiver "only when the claimed assistance directly affected the validity of that waiver or the plea itself"); cf. United States v. Branam, 231 F.3d 931, 931 n.1 (5th Cir.

2000) (considering defendant's argument that United States breached the plea agreement, despite an appeal-waiver provision in the plea agreement).  Thus, the Court turns first to this claim.

**B.     Alleged Ineffective Assistance of Counsel As to Plea**

An ineffective assistance of counsel allegation presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001).  To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial.  Id.  This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence.  United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001).  If the movant fails to prove one prong, it is not necessary to analyze the other.  Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

De Los Santos argues that his attorney was deficient during the plea process for inducing De Los Santos to lie to the Court at his rearraignment by allegedly telling De Los Santos to admit to "several lies" which increased his term of imprisonment and for advising him that the facts of the case supported a conviction for possession. When viewing the record as a whole, it is clear that De Los Santos cannot establish his burden on any of these claims, because his testimony at the rearraignment and the plain record of this case refute them.

In order to show prejudice arising from an attorney's ineffective assistance during the plea negotiations or the plea itself, De Los Santos must show that, absent his counsel's deficiencies, he would have proceeded to trial.  See United States v. Glinsey, 209 F.3d 386, 392 (5th Cir. 2000) (in

12

order to show prejudice as a result of ineffective assistance during the guilty plea process, a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial") (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)).  This is a showing that cannot be met here.  The rearraignment transcript clearly establishes that De Los Santos' decision to plead guilty was his own and that it was entirely voluntary.

At his rearraignment, De Los Santos testified that his attorney had answered all of his questions and was following his instructions, that his attorney came to see him in jail and took his phone calls, that he was satisfied with the advice and efforts of his attorney, and that he was able to communicate with his attorney completely.  (R. Tr. at 11-13.) The Court informed De Los Santos of the various trial rights available to him, and he testified that he understood that if he pleaded guilty, he would be giving up those trial rights.  (R. Tr. at 18-24.)

Consistent with Rule 11, Fed. R. Crim. P., the Court explained to De Los Santos the maximum punishment that he might receive.  Specifically, the Court informed him that he faced a maximum punishment on Count 2 of forty years in prison, and mandatory minimum term of five years.  (R. Tr. at 27.)  The Court also informed him that there was a maximum fine of $ 2 million,  a mandatory $100 special assessment, and that the supervised release term could last the rest of his life. (R. Tr. at 27-28.)  De Los Santos testified that he understood.  (R. Tr. at 27-28.)

Pertinent to De Los Santos' claims here, the Court also discussed with him the concept of relevant conduct.  The prosecutor informed the Court that it could prove De Los Santos should be held responsible for 1800 kilograms.  The Court asked De Los Santos and his counsel, David Diaz, whether that was correct.  His counsel stated that he was not sure, but that "it could be that."  The AUSA then stated that it would be somewhere over 1,000 and under 3,000 kilograms.  The Court allowed De Los Santos to visit with his attorney at this point in the rearraignment, so that he could make sure he understood the concept: "You better visit with your attorney, because it's going to make

13

a big difference."(R. Tr. at 30.)   De Los Santos and his counsel then conferred off the record.

Afterward, the following discussion occurred:

> **THE COURT:** Okay.  Mr. Diaz?
>
> **MR. DIAZ:** Your Honor, he understands as to the relevant conduct and why it could be as much as 1,800.
>
> **THE COURT:** Between 1,000 and 3,000.  Is that in dispute?
>
> **MR. DIAZ:** No, Your Honor, I don't think it will be in dispute.

(R. Tr. at 31.)  The AUSA also told the Court that there was a "possibility" De Los Santos "could be

a manager," because he hired drivers to transport loads.  (R. Tr. at 31-32.)  The Court asked De Los

Santos whether he had discussed that with his attorney, and he told the Court he had.  (R. Tr. at 32.)

Shortly thereafter, the Court asked again:

> **THE COURT:**  So now are you all aware of every possibility of how the sentencing guidelines might be affected by offender characteristics and relevant conduct?
>
> **THE COURT:** Mr. De Los Santos?
>
> **DEFENDANT DE LOS SANTOS:** Yes, Your Honor.

(R. Tr. at 32-33.)

De Los Santos had ample opportunity to inform the Court if he did not understand how relevant

conduct would apply in his case.  Instead, *after* the concept of relevant conduct was described to him

and *after* being told he could face a 40-year sentence, De Los Santos testified that no one had forced

him in any way to plead guilty and that his decision to plead guilty was entirely voluntary.  (R. Tr. at

34.)

De Los Santos' sworn statements in open court are entitled to a strong presumption of

truthfulness. United States v. Lampaziane, 251 F.3d 519, 524 (5th Cir. 2001) (citing Blackledge v.

Allison, 431 U.S. 63, 74 (1977)).  Indeed, the Fifth Circuit affords "great weight to the defendant's

statements at the plea colloquy." United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002). De Los Santos' sworn statements show that he understood the charges against him, he understood the possible maximum sentence he faced, and that he understood the government believed he would be held responsible for between 1000 and 3000 kilograms of marijuana. He nonetheless chose to plead guilty.

In short, De Los Santos cannot establish that he would have proceeded to trial absent the alleged deficiencies of counsel. Thus, this claim fails.

De Los Santos does not raise any other objections to the enforcement of his waiver, other than a conclusory statement that enforcement of his waiver would work a miscarriage of justice. (D.E. 69 at 1-2.) He appears to be relying on his other arguments herein to argue that the Court should not enforce the waiver. His argument is without merit. First of all, an otherwise valid waiver cannot be avoided or ignored merely because a defendant has a meritorious claim. See generally United States v. White, 307 F.3d 336 (5th Cir. 2002) (discussing enforceability of waivers). Otherwise, the illogical result would be that waivers would be enforceable only if there is no merit to the defendant's underlying claims, a result that would render defendants' waivers useless to the United States. Moreover, as discussed in Sections IV.D and IV.E .infra, De Los Santos' other claims have no merit.

Because the Court concludes that De Los Santos' challenges to the validity of his plea agreement fail, the Court finds that his plea agreement and his waiver of § 2255 rights contained therein are valid and enforceable. Accordingly, the Court turns to the effect of his waiver of § 2255 rights on his remaining claims.

## C.    Waiver of § 2255 Rights

It is clear from the rearraignment that De Los Santos understood that he was waiving his right both to appeal (except under certain circumstances) and to file any § 2255 motions, all that is required for his waiver to be enforceable. (R. Tr. at 23-24.) See Wilkes, 20 F.3d at 653 (waiver is knowing

if defendant understood he had a right, and understood he was giving it up). Again, De Los Santos'
statements under oath are entitled to a strong presumption of truthfulness. Wilkes, 20 F.3d at 653;
Cothran, 302 F.3d at 283-84. Those statements support the Court's conclusion that his waiver was
knowing and voluntary. De Los Santos' remaining claims are various challenges to his sentence,
challenges to the Court's application of the sentencing guidelines, claims of ineffective assistance of
counsel at sentencing, and a claim that counsel failed to investigate his case. All of these claims fall
squarely within the scope of his waiver. Therefore, they are not properly before the Court. For these
reasons, De Los Santos' § 2255 motion is DENIED in its entirety.

### D.    Alleged Errors at Sentencing

In addition to being barred by his waiver, De Los Santos' remaining claims also fail on their
merits. De Los Santos' primary contention is that he did not "recruit" or "hire" Elizondo to drive
loads, but merely introduced him to Ramirez. Nearly all of his claims flow from this alleged "fact."
He argues that he should not have been adjudged guilty, nor sentenced for anything more than "aiding
and abetting" possession, because he did not in fact possess the marijuana and had no interest,
financial or otherwise, in the transactions between Elizondo and Ramirez.

As an initial matter, his factual contention is flatly denied by his own statements at the
rearraignment. Although he claims to have been "intimidated" by the Court, the Court has listened to
the digital recording of the rearraignment and there was no "yelling" or "screaming" by the Court, as
he alleges. Moreover, De Los Santos exhibited no fear or hesitation in informing the Court of what
he believed to be errors in the prosecutor's description of the offense. At that time, he freely admitted
that he had recruited Elizondo to run loads of marijuana for Ramirez. He also told the Court that he
knew Mr. Ramirez from seeing Ramirez at his ranch when he "went to do the marijuana stuff." (R.
Tr. at 41-42.) His belated attempts to minimize his involvement in Ramirez's drug-trafficking
business are therefore completely contradicted by his own statements to the Court under oath at his

rearraignment.   As previously noted, his sworn statements under oath are entitled to a strong presumption of truthfulness.  Wilkes, 20 F.3d at 653.  Quite simply, De Los Santos has not rebutted that presumption.

Additionally, most of his challenges to his conviction and sentence are claims that the Court erred in its application of the sentencing guidelines.  Such claims are not cognizable in a § 2255 motion. United States v. Williamson, 183 F.3d 458, 462 (5th Cir. 1999).

### 1.  Sentence Based on Incorrect Amount of Marijuana

In several places, De Los Santos claims that he should not have been held accountable for the 609-kilogram load that Elizondo was found with at the checkpoint.  In his reply, he also argues that the *most* he should be held responsible for is that 609-kilogram load (due to his guilty plea) and that it was erroneous to attribute the additional loads to him.

De Los Santos' argument ignores that he was charged with – and knowingly pleaded guilty to – aiding and abetting Ramirez in possessing with intent to distribute approximately 609 kilograms of marijuana.  Although De Los Santos seems to believe that aiding and abetting possession should result in a lesser punishment that conspiracy, the law is clear that drug amounts attributable to a defendant include drugs possessed by other conspirators who were "aided and abetted" by the defendant.  United States v. Posada-Rios, 158 F.3d 832, 877-78 (5th Cir. 1998) (citing United States v. Carreon, 11 F.3d 1225, 1237 (5th Cir. 1994); see also U.S.S.G. § 1B1.3.  Under this authority, the additional amounts were properly attributed to him, and this claim fails.

Moreover, even if he were only held accountable for the 609 kilograms he pleaded guilty to, his offense level would not have been different.  De Los Santos was sentenced as a career offender, and his base offense level of 34 would have been the same regardless of whether he was held accountable for 609 kilograms of 1800 kilograms of marijuana.  See U.S.S.G. § 4B1.1 (career offender's base offense level is 34 where the statutory maximum for the offense if 25 years or more).

17

Thus, even if he had only been held accountable for the 609 kilograms, his offense level and guideline range would have been the same.  For all of these reasons, this claim fails.

### 2. Sentenced Based on Assertion That He Hired Elizondo

De Los Santos argues that his sentence should not have been based, in whole or in part, on the fact that he "hired" Elizondo, since this fact is allegedly untrue.  As previously discussed, De Los Santos admitted at his rearraignment that he recruited Elizondo to run loads for Ramirez.  Moreover, it's worth noting that his offense level was not increased based on his role in the offense, although that possibility was discussed at his rearraignment.  (Compare PSR at ¶ 21 (no increase in his offense level for his role in the offense) with R. Tr. at 31-32 (AUSA Booth stating that it was a possibility that De Los Santos could be found to be a manager in the offense, based on his hiring of Elizondo).)

### 3. Sentenced As a Career Offender

As to his claim that he could not be sentenced as a career offender because the government did not file a motion pursuant to 21 U.S.C. § 851, De Los Santos is confusing two unrelated concepts and provisions.  Section 851 allows the government to seek enhanced penalties for a conviction under § 841, which are set forth in § 841 and which increase the maximum sentence for an § 841 offense.  Section 851 has no bearing on whether a defendant can be sentenced as a career offender.  United States v. Marshall, 910 F.2d 1241, 1245 (5th Cir. 1990) (notice requirements of § 851 are not applicable to defendants sentenced as career offenders under the sentencing guidelines).

De Los Santos does not allege that any of the prior convictions were not accurately set forth in his PSR, and those convictions support treating him as a career offender.  Accordingly, this claim is without merit.

### 4.  Ineffective Assistance of Counsel at Sentencing

De Los Santos also argues that he was denied the effective assistance of counsel because his attorney failed to raise some or all of the foregoing objections to his sentence at sentencing.  In order to show prejudice as a result of counsel's alleged ineffectiveness at sentencing, De Los Santos would have to show that a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different.  See United States v. Phillips, 210 F.3d 345, 350 (5th Cir. 2000).  This requires him to show a reasonable probability that he would have received a lesser sentence.  United States v. Grammas, 376 F.3d 433, 438-39 (5th Cir. 2004).

As noted in the preceding sections, none of the sentencing objections that De Los Santos now raises had any merit.  Accordingly, counsel's failure to raise them does not support an ineffective assistance claim.  See United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

### E.      Counsel's Alleged Failure to Investigate

De Los Santos also makes a conclusory claim that his counsel failed to investigate his case, but he does not provide any information as to what the additional investigation would have revealed.  His claim fails on this ground alone.  United States v. Green, 882 F.2d 999, 1003 (5th Cir. 1989) ("A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.").  Moreover, there is no presumption of prejudice based on a failure to investigate.  Woodard v. Collins, 898 F.2d 1027, 1029 (5th Cir. 1990).  Because De Los Santos has not raised any specific facts that would show prejudice as a result of counsel's alleged failure to investigate, this claim fails.

**F.**      **Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although De Los Santos has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA.  See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right ***and*** that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that De Los Santos is not entitled to a COA as to any of his claims.  That is, reasonable jurists could not debate the Court's resolution of his claim challenging his plea and waiver.  Similarly, jurists of reason would not find it debatable that his valid and knowing waiver precludes consideration of the remainder of his claims, nor debate the Court's resolution of his remaining claims on their merits.

## V. CONCLUSION

For the above-stated reasons, De Los Santos' motion under 28 U.S.C. § 2255 (D.E. 50) is DISMISSED WITH PREJUDICE.  The Court also DENIES De Los Santos a Certificate of Appealability.

ORDERED this 18th day of April, 2008.

_____
Janis Graham Jack
United States District Judge